IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HOLIDAY HOSPITALITY FRANCHISING, LLC f/k/a HOLIDAY HOSPITALITY FRANCHISING, INC., SIX CONTINENTS HOTELS, INC., IHG MANAGEMENT (MARYLAND) LLC, and INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. _____ |
| v. | ) ) ) | |
| FLAMINGO STRUCTURES LLC, HALSTON MIKAIL, FARRAH MIKAIL a/k/a MRS. HALSTON MIKAIL, KEVIN BRAL a/k/a KAVEH BRAL, and JACKIE BRAL a/k/a MRS. KEVIN BRAL, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiffs Holiday Hospitality Franchising, LLC, formerly known as Holiday

Hospitality Franchising, Inc. ("HHFL"), Six Continents Hotels, Inc., doing

business as InterContinental Hotels Group ("SCH"), IHG Management (Maryland)

LLC ("IHGM") and InterContinental Hotels Group Resources, Inc. ("IHGR")

(collectively, "Plaintiffs") state the following for their Complaint against

Defendants Flamingo Structures LLC ("Flamingo"), Halston Mikail ("H. Mikail"),

Farrah Mikail also known as Mrs. Halston Mikail ("F. Mikail"), Kevin Bral also

known as Kaveh Bral ("K. Bral"), and Jackie Bral also known as Mrs. Kevin Bral

("J. Bral") (collectively, "Defendants"):

## NATURE OF THE CASE

### 1.

This is an action at law and in equity for trademark infringement, trademark

dilution, false designation of origin, unfair competition, breach of contract, and

breach of guaranty arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et

seq.* (2004) (the "Lanham Act"), and the common law.

### 2.

As more fully described below, Flamingo was a party to a license agreement

with HHFL, dated July 28, 2006 (the "License Agreement"), which sets out the

terms pursuant to which Flamingo was authorized to operate a hotel at the

intersection of Flamingo Road and Palos Verdes Street, Las Vegas, Nevada (the

"Hotel") as a HOLIDAY INN® hotel.  A copy of the License Agreement, as

amended, is attached as **Exhibit A**.  The License Agreement was terminated on

January 30, 2012.  Before and since that termination, Flamingo has breached its

obligations under the License Agreement, through, *inter alia*, failure to (i) comply

with the Licensor's Standards Manual, (ii) pay fees due and owing to HHFL

pursuant to the License Agreement, (iii) cease use of SCH and HHFL's HOLIDAY INN® Marks (as that term is defined below) in connection with its continued provision of hotel services at the Hotel, and (iv) indemnify HHFL for legal fees and costs incurred by its affiliate in defending against a lawsuit regarding services provided to Flamingo.

3.

Additionally, as more fully described below, H. Mikail, F. Mikail, K. Bral and J. Bral (collectively, the "Guarantors") executed a guaranty, also dated July 28, 2006 (the "License Agreement Guaranty"), pursuant to which they agreed jointly and severally to guarantee that all of Flamingo's obligations under the License Agreement would be punctually paid and performed.  A copy of the License Agreement Guaranty is attached as **Exhibit B**.  The License Agreement Guaranty provides that, upon learning of a default by Flamingo, the Guarantors would immediately make each payment and perform each obligation required of Flamingo under the License Agreement, including Flamingo's de-identification obligations upon termination.  The Guarantors have failed to de-identify the Hotel and to pay amounts due and owing to HHFL under the terms of the License Agreement Guaranty.

4.

Moreover, as fully described below, as Flamingo's members and owners, H. Mikail and K. Bral (collectively, the "Flamingo Owners") have personally directed, controlled, ratified, or participated in, or have been the moving force behind, the ongoing post-termination use of SCH and HHFL's HOLIDAY INN® Marks in connection with the continued provision of hotel services at the Hotel.

5.

Additionally, as described more fully below, IHGR and Flamingo were parties to a Management Agreement, pursuant to which IHGR managed and operated the Hotel. The Management Agreement was terminated on March 2, 2010 due to Flamingo's breach of the agreement. Since termination, Flamingo has breached its obligations under the Management Agreement by failing and refusing to pay fees and a termination fee due and owing pursuant to the Management Agreement.

6.

As described more fully below, the Guarantors executed a guaranty, dated February 27, 2009, pursuant to which they agreed jointly and severally to guarantee that all of Flamingo's obligations under the Management Agreement would be punctually paid and performed. Despite receiving notice of Flamingo's

US2008 3788972.2

default, the Guarantors have failed and refused to pay amounts due and owing

under the terms of the guaranty.

## PARTIES, JURISDICTION, AND VENUE

### 7.

Plaintiff Holiday Hospitality Franchising, LLC, formerly known as Holiday

Hospitality Franchising, Inc., is a Delaware limited liability company with its

principal place of business located at Three Ravinia Drive, Atlanta, DeKalb

County, Georgia 30346. HHFL's sole member is a Delaware corporation with its

principal place of business located in Georgia.

### 8.

Plaintiff SCH is a Delaware corporation with its principal place of business

located at Three Ravinia Drive, Atlanta, DeKalb County, Georgia 30346.

### 9.

Plaintiff IHGR is a Delaware corporation with its principal place of business

located at Three Ravinia Drive, Atlanta, DeKalb County, Georgia 30346.

### 10.

Plaintiff IHGM is a Maryland limited liability company with its principal

place of business located at Three Ravinia Drive, Atlanta, DeKalb County, Georgia

US2008 3788972.2

30346.  IHGM's sole member is a Delaware corporation with its principal place of business located in Georgia.

11.

Defendant Flamingo is a limited liability company organized under the laws of the State of Nevada.  Upon information and belief, Flamingo's members are citizens of states other than Delaware, Maryland, or Georgia.  Flamingo may be served through its registered agent, Halston Mikail, at 4055 Palos Verdes Street, Las Vegas, Nevada 89119 or at 3220 Nebraska Avenue, Santa Monica, California 90404 or at 2919 Wilshire Boulevard, Santa Monica, California 90403 or at 704 Walden Drive, Beverly Hills, California 90210.

12.

Upon information and belief, Defendant H. Mikail is a resident of the State of California.  Upon information and belief, H. Mikail may be served personally or by certified mail at 3220 Nebraska Avenue, Santa Monica, California 90404 or at 2919 Wilshire Boulevard, Santa Monica, California 90403 or at 704 Walden Drive, Beverly Hills, California 90210.

13.

Upon information and belief, Defendant F. Mikail is a resident of the State of California.  Upon information and belief, F. Mikail may be served personally or

US2008 3788972.2

by certified mail at 3220 Nebraska Avenue, Santa Monica, California 90404 or at 704 Walden Drive, Beverly Hills, California 90210.

14.

Upon information and belief, Defendant K. Bral is a resident of the State of California.  Upon information and belief, K. Bral may be served personally or by certified mail at 13030 Evanston Street, Los Angeles, California 90049.

15.

Upon information and belief, Defendant J. Bral is a resident of the State of California.  Upon information and belief, J. Bral may be served personally or by certified mail at 13030 Evanston Street, Los Angeles, California 90049.

16.

Subject matter jurisdiction exists under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Plaintiffs' related state and common law claims under 28 U.S.C. §§ 1338 and 1367.  Subject matter jurisdiction also exists under 28 U.S.C. §§ 1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and the matter is between citizens of different states.

US2008 3788972.2

17.

This Court has personal jurisdiction over the Defendants because in entering into and performing under the License Agreement and the License Agreement Guaranty, the Defendants transacted business in Georgia and benefited from the services of HHFL, which is domiciled in Georgia.

18.

Venue is proper in this Court because Flamingo agreed in Section 14.B. of the License Agreement that the "choice of law designation permits . . . that all suits concerning this License shall be filed in the State of Georgia."  Venue also is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Atlanta, Georgia, where Plaintiffs are located.

## FACTUAL BACKGROUND

<u>The HOLIDAY INN® Marks</u>

19.

Plaintiffs and their affiliates are in the business of operating, themselves or through their licensees, a worldwide network of hotels.  In conducting this business, SCH and HHFL own and license a system of hotels designed to provide a distinctive, high quality service to the public under service marks including, but not limited to, HOLIDAY INN®, HOLIDAY INN EXPRESS®, and HOLIDAY

INN CLUB VACATIONS®.  With more than 3,300 hotels worldwide, HOLIDAY INN® is one of the most widely recognized hotel brands in the world.

20.

Since at least as early as 1952, SCH and HHFL, through their predecessors-in-interest and such predecessors' authorized licensees, have used the HOLIDAY INN® service mark, both alone and in conjunction with other word and design elements, in interstate commerce in the United States for the purposes of identifying their hotel services.

21.

The HOLIDAY INN® service mark is well-known to its customers and its reputation extends throughout the United States.

22.

SCH is the owner of a federal service mark registration, Reg. No. 0592539, issued by the United States Patent and Trademark Office ("PTO") on July 13, 1954 for the service mark HOLIDAY INN for "motor hotel services—namely, providing lodging and restaurant services in motels and hotels."  Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit C**.

US2008 3788972.2

23.

SCH is the owner of a federal service mark registration, Reg. No. 3565631, issued by the PTO on January 20, 2009, for the service mark H HOLIDAY INN & Design, as depicted below, for "hotel, bar and restaurant services."



A copy of the Certificate of Registration for this mark is attached as **Exhibit D**.

24.

SCH is the owner of a federal service mark registration, Reg. No. 3565630, issued by the PTO on January 20, 2009, for the service mark H HOLIDAY INN & Design, as depicted below, for "hotel, bar and restaurant services."



A copy of the Certificate of Registration for this mark is attached as **Exhibit E**.

US2008 3788972.2

25.

In addition to the service mark registrations listed above, SCH and HHFL own a number of other U.S. trademark and service mark registrations used in connection with their HOLIDAY INN® hotels, including the following:

- Reg. No. 0592541, issued by the PTO on July 13, 1954, for HOLIDAY INN & Design for "motor hotel services—namely, providing lodgings and meals in hotels";

- Reg. No. 0708521, issued by the PTO on December 13, 1960, for HOLIDAY INNS OF AMERICA & Design for "motel services—namely, providing lodgings and meals in motels";

- Reg. No. 0864359, issued by the PTO on January 28, 1969, for HOLIDAY INN (stylized) for "hotel services, namely, providing lodging and restaurant services in hotels";

- Reg. No. 1243330, issued by the PTO on June 21, 1983, for HOLIDAY INN & Design for "hotel services—namely, providing lodging and restaurant services in hotels";

- Reg. No. 1275560, issued by the PTO on April 24, 1984, for HOLIDAY INN & Design for "hotel services—namely, providing lodging and restaurant services in hotels and motels";

-11-

- Reg. No. 1281008, issued by the PTO on June 5, 1984, for HOLIDAY INN & Design for "hotel and restaurant services";

- Reg. No. 1651851, issued by the PTO on July 23, 1991, for HOLIDAY INN EXPRESS for "hotel and restaurant services";

- Reg. No. 1806858, issued by the PTO on November 23, 1993, for HOLIDAY INN SUNSPREE RESORT for "hotel, bar, restaurant, banqueting, motel, night clubs, catering and hotel reservation services";

- Reg. No. 2034107, issued by the PTO on January 28, 1997, for HOLIDAY INN SELECT for "hotel services";

- Reg. No. 2207318, issued by the PTO on December 1, 1998, for HOLIDAY INN EXPRESS & Design for "hotel and restaurant services";

- Reg. No. 2370049, issued by the PTO on July 25, 2000, for HOLIDAY INN SELECT & Design for "hotel services";

- Reg. No. 2732102, issued by the PTO on July 1, 2003, for HOLIDAY INN SUNSPREE RESORTS & Design for "hotel, bar, restaurant, banqueting, motel, catering services and making hotel reservations for others";

- Reg. No. 3149872, issued by the PTO on September 26, 2006, for SELECT HOTEL BY HOLIDAY INN for "hotel services";

- Reg. No. 3331904, issued by the PTO on November 6, 2007, for HOLIDAY INN RESORT for "hotels";

- Reg. No. 3350226, issued by the PTO on December 4, 2007, for HOLIDAY INN for "shirts; t-shirts";

- Reg. No. 3651956, issued by the PTO on July 7, 2009, for H HOLIDAY INN & Design for "hotel services";

- Reg. No. 3651955, issued by the PTO on July 7, 2009, for H HOLIDAY INN EXPRESS & Design for "hotel services";

- Reg. No. 3775208, issued by the PTO on April 13, 2010, for H HOLIDAY INN RESORT for "resort hotels; hotel services";

- Reg. No. 3651952, issued by the PTO on July 7, 2009, for H HOLIDAY INN & Design for "hotel services";

- Reg. No. 3841950, issued by the PTO on August 31, 2010, for H HOLIDAY INN RESORT & Design for "resort hotels; restaurant and bar services; hotel services";

- Reg. No. 3565635, issued by the PTO on January 20, 2009, for H HOLIDAY INN EXPRESS & Design for "hotel services; restaurant services";

US2008 3788972.2

- Reg. No. 3565634, issued by the PTO on January 20, 2009, for H HOLIDAY INN EXPRESS & Design for "hotel services; restaurant services";

- Reg. No. 3710078, issued by the PTO on November 10, 2009, for HOLIDAY INN CLUB for, *inter alia*, "providing temporary accommodations; making hotel reservations for others";

- Reg. No. 3659235, issued by the PTO on July 21, 2009, for HOLIDAY INN CLUB VACATIONS for, *inter alia*, "providing temporary accommodations; making hotel reservations for others";

- Reg. No. 3659247, issued by the PTO on July 21, 2009, for H HOLIDAY INN CLUB VACATIONS & Design for, *inter alia*, "providing temporary accommodations; making hotel reservations for others";

- Reg. No. 3659246, issued by the PTO on July 21, 2009, for H HOLIDAY INN CLUB VACATIONS & Design for, *inter alia*, "providing temporary accommodations; making hotel reservations for others"; and

- Reg. No. 3751935, issued by the PTO on February 23, 2010, for H HOLIDAY INN EXPRESS & Design for "hotel services."

Copies of the Certificates of Registrations for these marks are attached collectively as **Exhibit F**.  For Reg. Nos. 0592541, 0708521, 0864359, 1243330, 1275560,

1281008, 1651851, 1806858, 2034107, 2207318, 2370049, and 2732102,
affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15
U.S.C. §§ 1058 and 1065, and these registrations are incontestable.  SCH and
HHFL's service marks referenced in Paragraphs 22-25 are collectively referred to
as the "HOLIDAY INN® Marks."

26.

As a result of SCH and HHFL's long-standing and extensive use of the
HOLIDAY INN® Marks in the United States since 1952, SCH and HHFL's
HOLIDAY INN® Marks are symbolic of the extensive goodwill and customer
recognition established by SCH and HHFL by virtue of the expenditure of
substantial amounts of time and effort in advertising and promoting their goods
and services under their trademarks and service marks.

27.

SCH and HHFL's HOLIDAY INN® Marks are famous and distinctive
within the meaning of 15 U.S.C. § 1125(c) in that:

a.    the marks possess both inherent and acquired distinctiveness;

b.    SCH and HHFL have made extensive and exclusive use of the
      HOLIDAY INN® Marks for an extended period of time;

US2008 3788972.2

c.     SCH and HHFL have extensively promoted services under the HOLIDAY INN® Marks throughout the United States;

d.     SCH and HHFL have used, and are currently using, the HOLIDAY INN® Marks throughout the United States;

e.     SCH and HHFL currently are providing services under the HOLIDAY INN® Marks;

f.     SCH and HHFL have successfully cultivated a high degree of recognition of the HOLIDAY INN® Marks in the trading areas and channels in which they do business;

g.     upon information and belief, there is no significant third-party use of the HOLIDAY INN® Marks or phonetic equivalents thereof; and

h.     the HOLIDAY INN® Marks is covered by multiple federal registrations.

<u>The License Agreement</u>

28.

HHFL entered into the License Agreement with Flamingo on July 28, 2006.

29.

Pursuant to the License Agreement, Flamingo was authorized and required to use the HOLIDAY INN® Marks, in addition to the System (as that term is

-16-

defined in the License Agreement), in the operation of a HOLIDAY INN® hotel at the Hotel.

30.

In Section 7.A. of the License Agreement, Flamingo "specifically agree[d] and acknowledge[d]" SCH and HHFL's exclusive ownership of and right to the HOLIDAY INN® Marks, and Flamingo agreed that it would "not contest directly or indirectly the validity or ownership of the [HOLIDAY INN® Marks] either during the term of this [License Agreement] or after its termination."

31.

In Section 7.C. of the License Agreement, Flamingo "agree[d] to use the [HOLIDAY INN® Marks] associated with the System only in the manner authorized by [HHFL] and acknowledge[d] that any unauthorized use thereof shall constitute infringement of [HHFL's] rights."

32.

Section 12.E. of the License Agreement contains Flamingo's de-identification obligations upon termination of Flamingo's License Agreement. Specifically, Section 12.E. provides, in pertinent part:

> [Flamingo] will take whatever action is necessary to assure that no use is made of any part of the System at or in connection with the Hotel after the License Term ends. This will involve, among other things, returning to

-17-

[HHFL] the Manual and all other materials proprietary to [HHFL], ceasing the use of any of [HHFL's] trademarks or service marks, physical changes of distinctive System features of the Hotel, including removal of the primary freestanding sign down to the structural steel, and all other actions required to preclude any possibility of confusion on the part of the public and to ensure that the Hotel is no longer using all or any part of the System or otherwise holding itself out to the public as a Holiday Inn hotel.  Anything not done by [Flamingo] in this regard within 30 days after termination, may be done at [Flamingo's] expense by [HHFL] or its agents who may enter upon the premises of the Hotel for that purpose.

33.

Section 3.A.(5) of the License Agreement requires that, among other things, Flamingo will "strictly comply in all respects with the [Licensor's Standard] Manual . . . and with all other policies, procedures and requirements of [HHFL] which may be from time to time communicated to [Flamingo] . . . ."

34.

Section 3.A.(17) of the License Agreement requires that, among other things, Flamingo will "promptly pay to [HHFL] all amounts due [HHFL], its parents, subsidiaries and affiliates as royalties or fees, whether or not arising out of [the License Agreement], or for goods or services purchased by [Flamingo] for use at the Hotel."

35.

Section 3.C. of the License Agreement sets forth fees required to be paid monthly to HHFL by Flamingo, including but not limited to, a royalty, a "Services Contribution," and a "Technology Fee."

36.

Section 9.A. of the License Agreement provides that

> [Flamingo] will indemnify [HHFL], its parents, and its subsidiaries and affiliates . . . against, hold them harmless from, and promptly reimburse them for all payments of money (fines, damages, legal fees, expenses, etc.) by reason of any claim, demand, tax, penalty, or judicial or administrative investigation or proceeding whenever asserted or filed . . . arising from any claimed occurrence at the Hotel or any act, omission or obligation of [Flamingo] or anyone associated or affiliated with [Flamingo] or the Hotel. . . .  [Flamingo] agrees to pay [HHFL] all expenses including attorneys' fees and court costs, incurred by [HHFL], its parents, subsidiaries or affiliates, and their successors and assigns to remedy any defaults of or enforce any rights under the [License Agreement], effect termination of the [License Agreement] or collect any amounts due under the [License Agreement].

37.

Section 12.A. of the License Agreement sets forth that the "[License Agreement] will expire without notice on ten (10) years from the date of the opening of the Hotel, subject to earlier termination as set forth herein."

38.

Section 12.C. of the License Agreement sets forth grounds for termination by HHFL on advance notice to Flamingo.

39.

Under Section 12.F. of the License Agreement, if HHFL terminates the License Agreement pursuant to paragraph 12.C., Flamingo is liable for liquidated damages for premature termination in a

> lump sum equal to the total amounts required under paragraphs 3.C(1), (3) and (4) during the 36 calendar months of operation preceding the termination or such shorter period as equals the unexpired License Term at the time of termination; or if the Hotel has not been in operation in the System for 36 months, the greater of: (1) 36 times the monthly average of such amounts for the period during which the Hotel has been in operation in the System, or (2) 36 times such amounts as are due for the one month preceding such termination.

40.

Pursuant to Section 14.B. of the License Agreement, the License Agreement is governed by Georgia law.

41.

Pursuant to Section 14.B., the License Agreement "shall be deemed made and entered into in the State of Georgia . . . .  [Flamingo] acknowledges that it has

-20-

sought, voluntarily accepted and become associated with [HHFL] who is headquartered in Atlanta, Georgia."

42.

Section 14.B. of the License Agreement also sets forth that the "choice of law designation permits, but does not require, that all suits concerning this [License Agreement] shall be filed in the State of Georgia."

43.

Pursuant to Section 14.J. of the License Agreement, Flamingo agreed to pay HHFL "all expenses, including reasonable attorney's fees and court costs, incurred by [HHFL], its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under the [License Agreement], effect termination of the [License Agreement] or collect any amounts due under the [License Agreement]."

The License Agreement Guaranty

44.

As an inducement to HHFL to execute the License Agreement, the Guarantors executed a License Agreement Guaranty, dated as of July 28, 2006. A copy of the License Agreement Guaranty is attached hereto as Exhibit B.

45.

Pursuant to the License Agreement Guaranty, the Guarantors "jointly and severally . . . guarantee[d] that all of [Flamingo's] obligations under the above [License Agreement] . . . will be punctually paid and performed."  Additionally, the License Agreement Guaranty sets forth that "[u]pon default by [Flamingo] and notice from [HHFL], the undersigned will immediately make each payment and perform each obligation required of [Flamingo] under the [License Agreement]."

46.

The License Agreement Guaranty is governed by Georgia law.

47.

Pursuant to the License Agreement Guaranty, the Guarantors "expressly waive[d] personal service of process and consent[ed] to service by certified mail, postage prepaid, directed to the last known address of the [Guarantors], which service shall be deemed completed within ten (10) days after the date of mailing thereof."

48.

Additionally, pursuant to the terms of the License Agreement Guaranty, the Guarantors

>  agree[d] to pay [HHFL] all expenses, including
>  reasonable attorneys' fees and court costs, incurred by

US2008 3788972.2

[HHFL], its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the [License Agreement], effect termination of this Guaranty or the [License Agreement], or collect any amounts due under this Guaranty or the [License Agreement].

<u>Flamingo's Default Under the License Agreement</u>

49.

Section 3.A.(5) of the License Agreement required Flamingo to "strictly comply in all respects with the [Licensor's Standards] Manual."

50.

Flamingo failed to comply with multiple brand standards required by the Licensor's Standards Manual (the "Manual").

51.

HHFL, through HHFL's parent, by a letter dated September 30, 2011 (the "September 30, 2011 Notice Letter"), notified Flamingo, through H. Mikail, that Flamingo had failed to comply with multiple brand standards and had failed to comply with the Manual.  The letter constituted a Notice of Default and Termination pursuant to the License Agreement and established a termination date of November 14, 2011.  A copy of the September 30, 2011 Notice Letter is attached hereto as **Exhibit G**.

-23-

52.

HHFL, through HHFL's parent, by a letter dated December 20, 2011 (the "December 20, 2011 Notice Letter"), notified Flamingo, through H. Mikail, that Flamingo has failed to cure its default under section 3.A.(5) of the License Agreement.  The letter further established a termination date of January 30, 2012. A copy of the December 20, 2011 Notice Letter is attached hereto as **Exhibit H**.

53.

Flamingo failed to meet its financial obligations to HHFL under the terms of the License Agreement by, among other things, failing to pay fees due and owing to HHFL between June 2011 and December 2011.

54.

Flamingo's failure to pay fees due and owing to HHFL pursuant to, but not limited to, Section 3 of the License Agreement constituted a default under the terms of the License Agreement.

55.

HHFL, through HHFL's parent, by a letter dated December 14, 2011 (the "December 14, 2011 Notice Letter") notified Flamingo, through H. Mikail, of Flamingo's default pursuant to the terms of the License Agreement, of amounts due and owing under the License Agreement, and of HHFL's intent to terminate

-24-

the License Agreement on January 30, 2012.  A copy of the December 14, 2011

Notice Letter is attached hereto as **Exhibit I**.

56.

HHFL, through HHFL's parent, by a letter dated January 19, 2012 (the

"January 19, 2012 Notice Letter") notified Flamingo, through H. Mikail, that

Flamingo had failed to cure it financial default by paying amounts due and owing

to HHFL and of HHFL's intent to terminate the License Agreement effective

January 30, 2012.  A copy of the January 19, 2012 Notice Letter is attached hereto

as **Exhibit J**.

57.

HHFL terminated the License Agreement on January 30, 2012.

58.

Pursuant to Section 12.F. of the License Agreement, because Flamingo was

terminated pursuant to Section 12.C. of the License Agreement, Flamingo owes

HHFL liquidated damages of $488,445.33.  The liquidated damages amount equals

36 times the monthly average of the amounts required under paragraphs 3.C(1),

(3), and (4) during the 24 months preceding the termination because the Hotel had

only been in operation for 24 months at the time of the termination.

-25-

59.

Flamingo and the Guarantors have failed and refused to pay amounts due and owing to HHFL pursuant to the terms of the License Agreement, including amounts for fees and liquidated damages.

60.

Flamingo failed to meet its financial obligations to HHFL under the terms of the License Agreement by, among other things, failing to pay fees due and owing to HHFL between December 2011 and the present.  A calculation of the amounts due is attached hereto as **Exhibit K**.

61.

The Guarantors are hereby notified of Flamingo's default under the terms of the License Agreement and are further notified of Flamingo's unpaid obligations in the amount of $534,247.69, including $488,445.33 in liquidated damages and $45,802.36 in system fees and finance charges, as of May 15, 2012.

62.

HHFL has incurred and continues to incur attorneys' fees in enforcing the terms of the License Agreement and the License Agreement Guaranty and in collecting amounts due pursuant to the terms of the License Agreement and the License Agreement Guaranty.

-26-

63.

By way of this complaint and in accordance O.C.G.A. § 13-1-11, HHFL

notifies Flamingo and the Guarantors of Flamingo's default under the License

Agreement and demands that the Flamingo and the Guarantors pay to HHFL their

respective obligations under the License Agreement and the License Agreement

Guaranty.  HHFL also notifies Flamingo and the Guarantors that they have ten (10)

days from service of this complaint to pay in full to HHFL the principal and

interest of their respective obligations under the License Agreement and the

License Agreement Guaranty without incurring attorneys' fees.

### Flamingo's Continued Use of the HOLIDAY INN® Marks

64.

Despite the January 30, 2012 termination, which revoked any authorization

or license for Flamingo to use the HOLIDAY INN® Marks, Flamingo, upon

information and belief, has continued to use the HOLIDAY INN® Marks to

mislead and deceive consumers into believing that it is an authorized HOLIDAY

INN® licensee or is otherwise associated with, sponsored by, or affiliated with

SCH and HHFL, when such is not the case.

65.

As Flamingo's members and owners, the Flamingo Owners have personally directed, controlled, ratified, or participated in, or have been the moving force behind, the continued post-termination use of SCH and HHFL's HOLIDAY INN® Marks in connection with the provision of hotel services at the Hotel.

66.

On April 9, 2012, SCH and HHFL, through counsel, sent a certified letter to H. Mikail notifying H. Mikail and Flamingo of their failure to completely de-identify in violation of the post-termination obligations.  The letter specifically identified the continuing presence of numerous items throughout the Hotel still bearing the HOLIDAY INN® service mark.  The letter also included photographs and a checklist that evidenced the de-identification violations, and it instructed H. Mikail to respond as to his intentions to complete the de-identification of the hotel.  A copy of the April 9, 2012 letter is attached as **Exhibit L**.

67.

Despite the notification of their continued failure to completely de-identify the Hotel, Flamingo and the Flamingo Owners, upon information and belief, have continued to use the HOLIDAY INN® Marks to mislead and deceive consumers into believing they are authorized HOLIDAY INN® licensees or are otherwise

-28-

associated with, sponsored by, or affiliated with SCH and HHFL, when such is not the case. A copy of a de-identification report dated May 10, 2012 showing Flamingo and the Flamingo Owners' continued display of HOLIDAY INN® Marks at the Hotel is attached as **Exhibit M**.

68.

On the travel website TripAdvisor.com, upon information and belief, Flamingo and the Flamingo Owners have identified the Hotel as "Blackstone Hotel . . . (Formerly Holiday Inn Las Vegas)." A copy of the TripAdvisor.com review of the Hotel is attached as **Exhibit N**. In the reviewer comments section of the Hotel's TripAdvisor.com review a reviewer commented on June 27, 2012 that the Hotel's "DND signs [i.e., do not disturb door hangers] still read Holiday Inn . . . ." And a different reviewer commented on July 11, 2012 that the Hotel was "[f]ormerly a Holiday Inn Hotel and some of the appliances are still branded as such."

69.

Flamingo and the Flamingo Owners' activities have inflicted and will continue to inflict irreparable harm to the goodwill symbolized by the HOLIDAY INN® Marks and the reputation that SCH and HHFL and their affiliates and licensees have established in the hotel services industry. Flamingo and the

-29-

Flamingo Owners' activities have deceived and confused, and will continue to deceive and confuse, SCH and HHFL customers, its authorized licensees, and the public.  Flamingo and the Flamingo Owners' activities have created, and are causing, a substantial likelihood of confusion as to the origin, sponsorship, approval, and quality of the services and goods that SCH and HHFL provide.

<u>The Lawsuit Against HHFL's Affiliate</u>

70.

IHG Management (Maryland), LLC ("IHGM"), an affiliate of HHFL and assignor of IHGR's interest in the Management Agreement, had acted as a manager of the Hotel, pursuant to a Management Agreement with Flamingo, dated September 25, 2007.

71.

On April 26, 2011, Allied Barton Security Services, Inc. ("Allied") filed a lawsuit in the District Court for Clark County, Nevada against IHGM, Flamingo, and Does 1-10, Case No. A-11-640160-C, Department XXXI (the "Lawsuit").

72.

The Lawsuit alleged that Allied provided security services at the Hotel and that the defendants had failed to pay amounts due for the services.

US2008 3788972.2

73.

Allied asserted claims for breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment against the defendants in the Lawsuit.

74.

On May 23, 2011, HHFL, through its parent, notified Flamingo, through H. Mikail, that the Lawsuit had been filed by Allied.  A copy of the May 23, 2011 letter is attached hereto as **Exhibit O**.

75.

As of July 31, 2012, IHGM has incurred attorneys' fees and litigation costs in the amount of $11,489.68 with respect to the Lawsuit.  IHGM continues to incur attorneys' fees and litigation costs in connection with the Lawsuit.

76.

Pursuant to Section 9.A. of the License Agreement, Flamingo is required to indemnify HHFL for the attorneys' fees and litigation costs IHGM has incurred in the defending the Lawsuit.

77.

Flamingo's failure and refusal to indemnify IHGM for the attorneys' fees and litigation costs incurred in connection with defending the Lawsuit constitutes a breach of the License Agreement.

US2008 3788972.2

<u>The Management Agreement</u>

78.

IHGM and Flamingo were parties to a Management Agreement, dated September 25, 2007 (the "Management Agreement"), pursuant to which IHGM managed the Hotel.  A copy of the Management Agreement is attached hereto as **Exhibit P**.

79.

The Management Agreement was amended through the First Amendment to Management Agreement, dated February 27, 2009.  A copy of the First Amendment to Management Agreement is attached hereto as **Exhibit Q**.

80.

The Management Agreement was assigned by IHGM to IHGR on May 11, 2009 pursuant to an Assignment of Management Agreement and Consent, Assignment and Subordination Agreement.

81.

Pursuant to the Management Agreement, IHGR was authorized to manage and operate the Hotel.

82.

Section 4.01 of the Management Agreement provides that

-32-

> [Flamingo] shall pay [IHGR] a pre-opening services fee
> . . . equal to [$40,000.00], which shall be payable in four
> (4) equal installments of [$10,000.00] each, each due on
> or before the first day of each of the four (4) calendar
> months preceding the Opening Date.

83.

Section 8.01 of the Management Agreement provides "No later than fifteen

(15) business days prior to the Opening Date, [Flamingo] shall deposit in the Bank

Accounts by wire transfer of immediately available federal funds the Initial

Working Capital, as the minimum working capital for the Hotel."  As defined in

the Management Agreement, as amended, Initial Working Capital was $1,250.00

per guest room at the hotel.

84.

Section 14.01 of the Management Agreement sets forth the circumstances

that will result in an Event of Default.

85.

The hotel was scheduled to open on December 10, 2009 and had 129 rooms.

<u>The Management Agreement Guaranty</u>

86.

As an inducement to IHGM to enter into a Consent, Assignment and

Subordination Agreement dated February 27, 2009 with Cathay Bank, which

-33-

pertained to the Management Agreement, the Guarantors entered into a Guaranty, dated February 27, 2009 (the "Management Agreement Guaranty"). A copy of the Management Agreement Guaranty is attached hereto as **Exhibit R**.

87.

Pursuant to the Management Agreement Guaranty, the Guarantors "jointly and severally . . . guarantee[d] to [IHGM] and its successors and assigns that, subject to the following paragraph, all obligations of [Flamingo] under the above referenced Management Agreement . . . will be punctually paid and performed."

88.

The Management Agreement Guaranty further provides that "the obligations being guaranteed hereunder shall be only those obligations of [Flamingo] under the Management Agreement, including, without limitation, payment of the Termination Fee . . . ."

89.

The Management Agreement Guaranty also sets forth that "[u]pon default by [Flamingo] under the Management Agreement and notice from [IHGM], the undersigned will immediately make each payment and perform each obligation required of [Flamingo] under the Management Agreement."

-34-

90.

The Management Agreement Guaranty specifically provides that "nothing herein shall prohibit [IHGM] from enforcing its rights under this [Management Agreement Guaranty] after the termination or expiration of the Management Agreement . . . ."

91.

The Management Agreement Guaranty is governed by Georgia law.

92.

Additionally, pursuant to the terms of the Management Agreement Guaranty, the Guarantors

> agree[d] to pay [IHGM] all expenses, including reasonable attorneys' fees and court costs, incurred by [IHGM], its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any right under this [Management Agreement Guaranty] or the Management Agreement, or collect any amounts due under this [Management Agreement Guaranty] or the Management Agreement.

Flamingo's Default and Breach Under the Management Agreement

93.

By a letter dated January 13, 2010, IHGR notified Flamingo and the Guarantors (the "January 13, 2010 Notice Letter") that Flamingo had failed to comply with Sections 4.01 and 8.01 of the Management Agreement by failing to

-35-

deposit (1) the required funds of $40,000.00 for pre-opening activities and (2) the

required funds to satisfy the shortfall for the Initial Working Capital.  The January

13, 2010 Notice Letter gave notice to Flamingo, pursuant to Section 14.01 of the

Management Agreement, of Flamingo's failures, and notified Flamingo that it was

in breach of the Management Agreement.  IHGR further notified Flamingo that it

had five days to cure the breaches and that failure to do so would be an Event of

Default giving rise to termination of the Management Agreement.  A copy of the

January 13, 2010 Notice Letter is attached hereto as **Exhibit S**.

94.

By a letter dated January 29, 2010, IHGR notified Flamingo and the

Guarantors (the "January 29, 2010 Notice Letter") that Flamingo had failed to cure

its breach and gave Flamingo notice that IHGR would terminate the Management

Agreement effective March 2, 2010.  A copy of the January 29, 2010 Notice Letter

is attached hereto as **Exhibit T**.

95.

Section 14.02(b) of the Management Agreement provides that "[i]f either

[Flamingo] or [IHGR] terminates the [Management Agreement] for any reason,

then [Flamingo] will immediately pay to [IHGR] all amounts due and owing under

this [Management Agreement] through the effective date of such termination."

-36-

96.

Section 14.03 of the Management Agreements sets forth that "[i]n the event of an Event of Default by [Flamingo] hereunder, [IHGR] may elect to . . . pursue damages in the amount of the termination fee calculated as set forth in this Section."

97.

Section 20.07 of the Management Agreement sets forth that "[s]hould [Flamingo] or [IHGR] engage in litigation to enforce its respective rights under this [Management Agreement], the prevailing party shall have the right to indemnity from the non-prevailing party for an amount equal to the prevailing party's reasonable attorneys fees, court costs and expenses arising therefrom."

98.

Pursuant to Section 14.02 of the Management Agreement, IHGR terminated the Management Agreement effective March 2, 2010.

99.

As defined in Section 14.03 of the Management Agreement, IHGR is entitled to a termination fee in the amount of $480,000.00.

US2008 3788972.2

100.

IHGR incurred fees and costs in managing the Hotel for which it was not reimbursed by Flamingo.  Flamingo failed to pay IHGR for fees due and owing in the amount of $185,388.75 and failed to pay IHGR the termination fee of $480,000.00.  A calculation of the amounts due and owing to IHGR by Flamingo is attached hereto as **Exhibit U**.

101.

Flamingo and the Guarantors have failed and refused to pay amounts due and owing to IHGR pursuant to the terms of the Management Agreement, including the termination fee.

102.

Flamingo's failure to pay fees due and owing to IHGR pursuant to Section 14.02 of the Management Agreement constituted a breach of the Management Agreement.

103.

The Guarantors are hereby notified of Flamingo's default under the terms of the Management Agreement and are further notified of Flamingo's unpaid obligations in the amount of $665,388.75 as of August 13, 2010.

US2008 3788972.2

104.

All conditions precedent for bringing this lawsuit have been performed or waived.

## COUNT I
### (Federal Service Mark Infringement – By SCH and HHFL Against Flamingo and the Flamingo Owners)

105.

SCH and HHFL reallege and incorporate by reference, as if set forth fully herein, the allegations contained in paragraphs 1-32 and 64-69 of this complaint and all other paragraphs referencing Flamingo and the Flamingo Owners' infringement.

106.

Flamingo and the Flamingo Owners' unauthorized use of the HOLIDAY INN® Marks in connection with directly competing or related services infringes the federally registered HOLIDAY INN® Marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

107.

Flamingo and the Flamingo Owners' use of the HOLIDAY INN® Marks in connection with the activities alleged above has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion, mistake, and/or deception

-39-

as to the affiliation, connection, association, origin, sponsorship, approval, commercial activities, nature, characteristics, and qualities of Flamingo and the Flamingo Owners' services relative to SCH and HHFL's services.

108.

Flamingo and the Flamingo Owners' actions demonstrate an intentional, willful, and bad faith intent to trade on the goodwill associated with the HOLIDAY INN® Marks.

109.

Because of Flamingo and the Flamingo Owners' unlawful actions, SCH and HHFL have suffered and continue to suffer irreparable harm, including, but not limited to, detriment to and diminution in value of their marks, for which there is no adequate remedy at law.  Accordingly, SCH and HHFL are entitled to an injunction against Flamingo and the Flamingo Owners, pursuant to 15 U.S.C. § 1116.

110.

SCH and HHFL have also suffered and continue to suffer injury and are entitled to recover all damages sustained by Flamingo and the Flamingo Owners' actions, all profits realized, and the costs of this suit, pursuant to 15 U.S.C. § 1117.

-40-

111.

Given that Flamingo and the Flamingo Owners' actions were willful, deliberate, and fraudulent, SCH and HHFL are entitled to treble damages and an award of reasonable attorneys' fees against Flamingo and the Flamingo Owners, pursuant to 15 U.S.C. § 1117.

## COUNT II
### (Federal Unfair Competition and False Designation of Origin – By SCH and HHFL Against Flamingo and the Flamingo Owners)

112.

SCH and HHFL reallege and incorporate by reference, as if set forth fully herein, the allegations contained in paragraphs 1-32, 64-69, and 105-111 of this complaint and all other paragraphs referencing Flamingo and the Flamingo Owners' unfair competition and false designation of origin.

113.

Flamingo and the Flamingo Owners' unauthorized use of the HOLIDAY INN® Marks constitutes false representation, false description, and false designation of origin of Flamingo and the Flamingo Owners' services in violation of 15 U.S.C. § 1125(a) and is causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion, mistake, and deception of the consuming public.

US2008 3788972.2

114.

As a direct and proximate result of these activities, SCH and HHFL have suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill. Such conduct has caused and, unless enjoined, will continue to cause SCH and HHFL to lose sales to which they would otherwise be entitled, will impair the ability of a new licensee to operate successfully an authorized HOLIDAY INN® hotel in the area formerly served by Flamingo and the Flamingo Owners, and will otherwise harm SCH and HHFL's valuable reputation and goodwill.

115.

Flamingo and the Flamingo Owners' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the HOLIDAY INN® Marks to SCH and HHFL's great and irreparable injury.

116.

Flamingo and the Flamingo Owners have caused and are likely to continue causing substantial injury to the public and to SCH and HHFL, and SCH and HHFL are entitled to injunctive relief and to recover Flamingo and the Flamingo Owners' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

-42-

**COUNT III**
**(Federal Trademark Dilution – By SCH and HHFL**
**Against Flamingo and the Flamingo Owners)**

117.

SCH and HHFL reallege and incorporate by reference, as if set forth fully herein, the allegations contained in paragraphs 1-32, 64-69, 106-111, and 113-116 of this complaint and all other paragraphs referencing Flamingo and the Flamingo Owners' dilution of the famous HOLIDAY INN® Marks.

118.

SCH and HHFL have extensively and continuously promoted and used the HOLIDAY INN® Marks both in the United States and throughout the world. The marks thereby have become distinctive, famous, and well-known symbols of SCH and HHFL's services.

119.

The HOLIDAY INN® Marks are famous under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of SCH and HHFL's hotel services. The HOLIDAY INN® Marks became famous long prior to Flamingo and the Flamingo Owners' unlawful use of the HOLIDAY INN® Marks, or colorable imitations thereof, as alleged herein.

-43-

120.

Flamingo and the Flamingo Owners' unauthorized use of the HOLIDAY INN® Marks, or colorable imitation thereof, in connection with their operation of a hotel is likely to dilute SCH and HHFL's famous HOLIDAY INN® Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish SCH and HHFL exclusively as the source of services provided under the famous HOLIDAY INN® Marks.

121.

Flamingo and the Flamingo Owners' unauthorized use of the HOLIDAY INN® Marks in connection with their operation of a hotel is intended and has the effect of trading on SCH and HHFL's reputations and causing dilution of the famous HOLIDAY INN® Marks.

122.

Upon information and belief, Flamingo and the Flamingo Owners do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, the HOLIDAY INN® Marks and cannot assert any rights in the HOLIDAY INN® Marks that are prior to SCH and HHFL's first use, actual or constructive, of the HOLIDAY INN® Marks.

US2008 3788972.2

123.

Flamingo and the Flamingo Owners' trademark dilution as herein alleged has injured and will continue to injure SCH and HHFL in that SCH and HHFL have suffered and will continue to suffer damage to their reputation and customer goodwill as a direct and proximate result of Flamingo and the Flamingo Owners' illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Flamingo and the Flamingo Owners have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, as a direct and proximate result of their illegal conduct.

124.

SCH and HHFL are entitled to recover all damages sustained by Flamingo and the Flamingo Owners' actions, all profits realized by Flamingo and the Flamingo Owners through their unlawful use of the HOLIDAY INN® Marks, or colorable imitations thereof, and the costs of this action.

**COUNT IV**
**(Common Law Trademark Infringement and Unfair Competition – By SCH and HHFL Against Flamingo and the Flamingo Owners)**

125.

SCH and HHFL reallege and incorporate by reference, as if set forth fully herein, the allegations contained in paragraphs 1-32, 64-69, 106-111, 113-116, and

US2008 3788972.2

118-124 of this complaint and all other paragraphs referencing Flamingo and the Flamingo Owners' infringement and unfair competition.

126.

Flamingo and the Flamingo Owners' conduct as alleged above constitutes unfair competition in violation of the common law of the State of Georgia and the common law of other states.

127.

Flamingo and the Flamingo Owners have acted with knowledge of SCH and HHFL's rights in and to the HOLIDAY INN® Marks and without regard to the likelihood of confusion of the public created by Flamingo and the Flamingo Owners' activities.

128.

Flamingo and the Flamingo Owners' actions demonstrate a willful intent to trade on the goodwill associated with the HOLIDAY INN® Marks to the irreparable injury of SCH and HHFL.

129.

As a direct and proximate result of these activities, SCH and HHFL have suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer

-46-

goodwill.  Such conduct has caused and, unless enjoined, will continue to cause SCH and HHFL to lose sales to which they would otherwise be entitled, will impair the ability of a new licensee to operate successfully as an authorized HOLIDAY INN® hotel in the area formerly served by Flamingo and the Flamingo Owners, and will otherwise harm SCH and HHFL's valuable reputation and goodwill.

## COUNT V
### (Breach of the License Agreement – By HHFL Against Flamingo)

130.

HHFL realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1-18, 28-43, and 49-77 of this complaint and all other paragraphs referencing Flamingo's obligations under the License Agreement and breach of such obligations.

131.

HHFL and Flamingo entered into the License Agreement regarding the use of the System (as that term is defined in the License Agreement) in the operation of a HOLIDAY INN® hotel at the Hotel.

132.

The License Agreement constitutes a binding contract between HHFL and Flamingo.

-47-

133.

Flamingo's failure to comply with the Manual constituted a default and breach of Section 3.A.(5) of the License Agreement.

134.

Flamingo has failed and refused to cease the use of SCH and HHFL's HOLIDAY INN® Marks since the termination of the License Agreement.

135.

Flamingo's failure to cease the use of SCH and HHFL's HOLIDAY INN® Marks constitutes a breach of the License Agreement.

136.

As a result of Flamingo's failure to cease the use of the HOLIDAY INN® Marks, HHFL has incurred damages in an amount to be determined at trial.

137.

Flamingo has failed and refused to pay system fee and liquidated damage amounts due and owing under the terms of the License Agreement.

138.

Flamingo's failure to pay system fee and liquidated damage amounts due and owing constituted a default and a breach of the License Agreement.

US2008 3788972.2

139.

As a proximate result of Flamingo's breaches, as of May 10, 2012, HHFL has incurred damages in the amount of $534,247.69, including $45,802.36 in system fees and finance charges and $488,445.33 in liquidated damages, plus reasonable attorneys' fees, costs, and expenses.

140.

Flamingo has failed and refused to indemnify HHFL for attorneys' fees and litigation costs incurred by IHGM, an affiliate of HHFL, in the Lawsuit.

141.

Flamingo's failure to indemnify HHFL for attorneys' fees and litigation costs incurred by IHGM constituted a default and a breach of the License Agreement.

142.

As a proximate result of Flamingo's indemnification breaches, as of July 31, 2012, HHFL has incurred damages in the amount of $11,489.68.

143.

Flamingo is liable for prejudgment interest on the outstanding liquidated damages of $488,445.33 and indemnification obligations of $11,489.69 in the

US2008 3788972.2

amount of 7% per annum from the date of service of this complaint through the time of trial.

144.

Flamingo is liable for prejudgment interest on the outstanding damages resulting from unpaid system fees in the amount of 1.5% per month through the time of trial.

145.

In the event the liquidated damages provision contained in the License Agreement is deemed unenforceable, then, in the alternative, HHFL is entitled to recover its actual damages resulting from the early termination of the License Agreement, plus all pre- and post-judgment interest.

146.

HHFL is entitled to a judgment against Flamingo for the foregoing amounts.

**COUNT VI**
**(Breach of the License Agreement Guaranty – By HHFL Against the Guarantors)**

147.

HHFL realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1-18, 28-77, and 131-146 of this complaint

-50-

and all other paragraphs referencing the Guarantors' obligations under the License Agreement Guaranty and breach of such obligations.

148.

HHFL and the Guarantors entered into the License Agreement Guaranty.

149.

The License Agreement Guaranty constitutes a binding contract between HHFL and the Guarantors.

150.

HHFL, through its parent, sent a timely demand letter to H. Mikail notifying him of Flamingo's failure to de-identify the Hotel.

151.

Despite this notification, and despite their obligations under the License Agreement Guaranty, the Guarantors have failed and refused to de-identify the Hotel.

152.

The Guarantors have breached their obligations under the License Agreement Guaranty by failing and refusing to de-identify the Hotel.

US2008 3788972.2

153.

As a result of the Guarantors' failure and refusal to de-identify the Hotel, HHFL has incurred damages in an amount to be determined at trial.

154.

The Guarantors have failed and refused to pay amounts due and owing under the terms of the License Agreement Guaranty.

155.

The Guarantors have breached their obligations under the License Agreement Guaranty by failing and refusing to pay Flamingo's financial obligations (that are due pursuant to the terms of the License Agreement) to HHFL.

156.

As a proximate result of the Guarantors' breaches, as of May 10, 2012, HHFL has incurred damages in the amount of $545,737.37, including $45,802.36 in system fees and finance charges, $488,445.33 in liquidated damages, and $11,489.68 in connection with Flamingo's failure to indemnify IHGM for attorneys' fees and litigation costs incurred in connection with the Lawsuit, plus reasonable attorneys' fees, costs, and expenses.

US2008 3788972.2

157.

The Guarantors are liable for prejudgment interest on the outstanding damages resulting from unpaid system fees in the amount of 1.5% per month through the time of trial.

158.

The Guarantors are liable for prejudgment interest on the outstanding liquidated damages of $488,445.33 and indemnification obligations of $11,489.69 in the amount of 7% per annum from the date of service of the complaint through the time of trial.

159.

In the event the liquidated damages provision contained in the License Agreement is deemed unenforceable, then, in the alternative, HHFL is entitled to recover its actual damages resulting from the early termination of the License Agreement, plus all pre- and post-judgment interest.

160.

HHFL is entitled to a judgment against the Guarantors for the foregoing amounts.

US2008 3788972.2

## COUNT VII
### (Breach of Management Agreement – By IHGR Against Flamingo)

161.

IHGR realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1-18, 78-85, and 93-104 of this complaint and all other paragraphs referencing Flamingo's obligations under the Management Agreement and breach of such obligations.

162.

IHGR and Flamingo entered into the Management Agreement under which IHGR managed and operated the Hotel.

163.

The Management Agreement constitutes a binding contract between IHGR and Flamingo.

164.

Flamingo's failure to comply with Sections 4.01 and 8.01 of the Management Agreement resulted in an Event of Default by Flamingo and termination of the Management Agreement by IHGR.

165.

Flamingo has failed and refused to pay fees and the termination fee amounts due and owing under the terms of the Management Agreement.

-54-

166.

Flamingo's failure to pay the fee and termination fee amounts due and owing constitutes a breach of the Management Agreement.

167.

As a proximate result of Flamingo's breaches, as of August 13, 2010, IHGR has incurred damages in the amount of $665,388.75, including a termination fee of $480,000.00.

168.

In the event the liquidated damages termination fee provision contained in the Management Agreement is deemed unenforceable, then, in the alternative, IHGR is entitled to recover its actual damages resulting from the early termination of the Management Agreement, plus all pre- and post-judgment interest.

169.

IHGR is entitled to a judgment against Flamingo for the foregoing amounts.

## COUNT VIII
### (Breach of the Management Agreement Guaranty – By IHGM Against the Guarantors)

170.

 IHGM realleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1-18, 78-104, and 162-169 of this

US2008 3788972.2

complaint and all other paragraphs referencing the Guarantors' obligations under the Management Agreement Guaranty and breach of such obligations.

171.

IHGM and the Guarantors entered into the Management Agreement Guaranty.

172.

The Management Agreement Guaranty constitutes a binding contract between IHGM and the Guarantors.

173.

IHGR sent a timely notice letter to the Guarantors notifying them of Flamingo's breach of Sections 4.01 and 8.01 of the Management Agreement.

174.

Despite this notification, and despite their obligations under the Management Agreement Guaranty, the Guarantors have failed and refused to pay fees and the termination fee amounts due under the terms of the Management Agreement Guaranty.

US2008 3788972.2

175.

The Guarantors have breached their obligations under the Management Agreement Guaranty by failing and refusing to pay Flamingo's obligations (that are due pursuant to the Management Agreement) to IHGR.

176.

As a proximate result of the Guarantor's breaches, as of August 13, 2010, IHGM has incurred damages in the amount of $665,388.75, including a termination fee of $480,000.00, plus reasonable attorneys' fees, costs, expenses, and prejudgment interest.

177.

In the event the liquidated damages termination fee provision contained in the Management Agreement is deemed unenforceable, then, in the alternative, IHGM is entitled to recover its actual damages resulting from the early termination of the Management Agreement, plus all pre- and post-judgment interest.

178.

IHGM is entitled to a judgment against the Guarantors for the foregoing amounts.

## COUNT IX
### (Attorneys' Fees – By All Plaintiffs Against all Defendants)

179.

Plaintiffs reallege and incorporate by reference, as if set forth fully herein, the allegations contained in paragraphs 1-178 of this complaint.

180.

The License Agreement requires Flamingo to pay HHFL's collection expenses, including reasonable attorneys' fees.

181.

The License Agreement Guaranty requires the Guarantors to pay HHFL's collection expenses, including reasonable attorneys' fees.

182.

The Management Agreement Guaranty requires the Guarantors to pay IHGM's collection expenses, including reasonable attorneys' fees.

183.

HHFL has incurred and continues to incur attorneys' fees in enforcing the terms of the License Agreement and the License Agreement Guaranty and in collecting amounts due pursuant to the terms of the License Agreement and the License Agreement Guaranty.

-58-

184.

IHGR and IHGM have incurred and continue to incur attorneys' fees in
enforcing the terms of the Management Agreement and the Management
Agreement Guaranty and in collecting amounts due pursuant to the terms of the
Management Agreement and the Management Agreement Guaranty.

185.

In accordance with O.C.G.A. § 13-1-11, HHFL and IHGR hereby notify
Flamingo of its financial obligations under the License Agreement and the
Management Agreement and that Flamingo has ten (10) days from receipt of such
notice to pay to HHFL and IHGM the principal and interest of such financial
obligations without incurring attorneys' fees.

186.

In accordance with O.C.G.A. § 13-1-11, HHFL and IHGM hereby notify the
Guarantors of their financial obligations under the License Agreement Guaranty
and the Management Agreement Guaranty and that the Guarantors have ten (10)
days from receipt of such notice to pay to HHFL and IHGM the principal and
interest of such financial obligations without incurring attorneys' fees.

-59-

187.

HHFL is entitled to a judgment granting it the reasonable attorneys' fees that it, its parents, subsidiaries, and affiliates have incurred in bringing this lawsuit to collect the Flamingo's and the Guarantors' financial obligations and in enforcing its rights pursuant to the License Agreement and the License Agreement Guaranty.

188.

IHGM is entitled to a judgment granting it the reasonable attorneys' fees that it, its parents, subsidiaries, and affiliates have incurred in bringing this lawsuit to collect Flamingo's and the Guarantors' financial obligations and in enforcing its rights pursuant to the Management Agreement Guaranty.

189.

In addition and alternatively, Defendants have been stubbornly litigious by failing and refusing to pay their debts, causing Plaintiffs unnecessary trouble and expenses.  In accordance with O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover all of their attorneys' fees and expenses of litigation.

190.

Plaintiffs are entitled to a judgment requiring Defendants to pay Plaintiffs' attorneys' fees.

US2008 3788972.2

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

(a)     That Flamingo, its respective affiliates, officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Flamingo, including the Flamingo Owners, be preliminarily and permanently restrained and enjoined from any and all further unauthorized use of the HOLIDAY INN® Marks, or any colorable imitation thereof, and any other trademark, service mark, name, logo, design, or identifying characteristic of HOLIDAY INN® hotels on or in connection with Flamingo's purported services that is likely to cause confusion, mistake, deception, or public misunderstanding that Flamingo is affiliated with, licensed by, endorsed by, approved by, franchises of, or otherwise associated with SCH and HHFL;

(b)     That Flamingo and the Flamingo Owners be ordered to deliver up for impoundment and for destruction all labels, signs, uniforms, advertising material, promotional material, stationary or other materials in the possession, custody, or under the control of Flamingo and the Flamingo Owners that use or display the HOLIDAY INN® Marks, or colorable imitations thereof;

(c)     That SCH and HHFL have and recover from Flamingo and the Flamingo Owners monetary damages consistent with the Lanham Act and any

US2008 3788972.2

applicable state law, including, without limitation, compensation for HHFL and SCH's damages, Flamingo and the Flamingo Owners' profits or other financial benefits from their unfair competition and breach of contract, all in amounts to be determined at trial, and to be trebled as permitted under law because of Flamingo and the Flamingo Owners' willful and deliberate activities described herein;

(d)     That SCH and HHFL recover from Flamingo and the Flamingo Owners their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and relevant state and common law;

(e)     That Flamingo be required to comply with all of Flamingo's post-termination obligations under the License Agreement, including but not limited to ceasing use of the HOLIDAY INN® Marks; ceasing use of all signs, furniture and fixtures, special equipment, advertising matter, stationary, forms and other articles which display the HOLIDAY INN® name or HOLIDAY INN® Marks; and refraining from holding itself out to the public as a HOLIDAY INN® licensee;

(f)     That the Guarantors be required to comply with all their obligations as guarantors under the License Agreement Guaranty, including but not limited to causing the cessation of use by Flamingo of the HOLIDAY INN® name and HOLIDAY INN® Marks; causing the cessation of use by Flamingo of color schemes, patterns, slogans, designs, logos, and emblems of HOLIDAY INN®

US2008 3788972.2

hotels; causing the cessation of use by Flamingo of all signs, furniture and fixtures, special equipment, advertising matter, stationary, forms, and other articles which display the HOLIDAY INN® name or HOLIDAY INN® Marks; and refraining Flamingo from holding itself out to the public as a HOLIDAY INN® licensee;

(g)     That the Court enter judgment in favor of HHFL and against Flamingo and the Guarantors, jointly and severally, for $545,737.37, plus interest for their respective breaches of the License Agreement and License Agreement Guaranty;

(h)     That the Court enter judgment in favor of IHGR and against Flamingo and in favor of IHGM and against the Guarantors, jointly and severally, for $665,388.75, plus interest for their respective breaches of the Management Agreement and Management Agreement Guaranty;

(i)     That the Court enter judgment in favor of HHFL and IHGM and against Flamingo and the Guarantors for the attorneys' fees and costs incurred in enforcing the terms of the License Agreement, Management Agreement Guaranty, and License Agreement Guaranty, including amounts incurred collecting amounts due under the License Agreement, Management Agreement Guaranty, and License Agreement Guaranty, pursuant to O.C.G.A. §13-1-11 and/or pursuant to O.C.G.A. § 13-6-11;

US2008 3788972.2

(j)     That the Court tax all costs of this action against Flamingo and the

Guarantors; and

(k)     That the Court enter such other relief as is just and proper.

Respectfully submitted, this 31st day of August, 2012.


|  |  |
|---|---|
|  | /s Michael W. Tyler |
| KILPATRICK TOWNSEND & | Michael W. Tyler |
|     STOCKTON LLP | Georgia Bar No. 721152 |
| Suite 2800 | Robert E. Buckley |
| 1100 Peachtree Street, NE | Georgia Bar No. 140280 |
| Atlanta, Georgia 30309 | James W. Faris |
| (404) 815-6500 (telephone) | Georgia Bar No. 452293 |
| (404) 815-6555 (facsimile) |  |
| mtyler@kilpatricktownsend.com | Attorneys for Plaintiffs |

US2008 3788972.2